# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 23, 2026

Lyle W. Cayce
Clerk

No. 24-30347

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

TRAYVON MURPHY,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CR-57-8

Before JONES, STEWART, and RAMIREZ, *Circuit Judges*.
IRMA CARRILLO RAMIREZ, *Circuit Judge*:

Trayvon Murphy appeals his sentence, challenging the district court's factual findings, drug quantity calculations, denial of a mitigating role adjustment, application of a cross-reference, and standard of proof. We AFFIRM in part, REVERSE in part, and REMAND for resentencing.

I

Murphy was charged in a multi-count superseding indictment with conspiracy to possess and brandish firearms during and in furtherance of crimes of violence and a drug trafficking crime in violation of 18 U.S.C.

No. 24-30347

§ 924(o) (Count 1), conspiracy to distribute and possess with intent to distribute cocaine and heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 846 (Count 2), conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count 10), and Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count 11). Murphy pleaded guilty to the superseding indictment without a plea agreement.

According to the 17-page factual resume he submitted in support of his plea, Murphy was associated with a New Orleans street gang led by one of Murphy's co-defendants, Julius Alexander, from January 2019 to December 2021. Murphy and Alexander communicated about drug sales and firearms by text. For example, on January 10, 2020, Murphy texted "that he was waiting on two 'half quake pops,' which is [a] reference to 3.5-gram sales." Other texts showed when Alexander tried to collect money for heroin he distributed to Murphy, Murphy responded that "shooters" (intravenous drug users) were complaining of the quality. On January 31, 2020, Alexander texted Murphy that he needed bullets and asked about their location. The factual resume concluded with Murphy's admission that he and his associates used and possessed firearms in furtherance of drug trafficking, regularly sold cocaine and heroin, and attempted to rob a rival drug dealer, Jermaine Gooden, of drugs and drug proceeds.

According to the presentence report ("PSR") prepared by the United States Probation Office, on January 31, 2020, Murphy provided Alexander with a .223 caliber rifle and drove him and a co-defendant to Gooden's location. Alexander shot and killed Gooden. Later, by text, Alexander promised Murphy 28 grams of heroin and 28 grams of cocaine for his assistance in the murder. Because it found Murphy was involved in Gooden's murder, the PSR identified U.S.S.G. § 2K2.1 as the applicable Guideline for Count 1. It then applied the cross-reference at § 2K2.1(c)(1)(B), using the provision for first-degree murder, § 2A2.1(a), to

calculate a base offense level of 43. After applying a three-level deduction for acceptance of responsibility under § 3E1.1, the PSR reduced Murphy's offense level to 40. Based on a criminal history category of II, the resulting Guidelines range was 324 to 405 months.

For Count 2, the PSR found Murphy responsible for 100 grams of heroin and 28.35 grams of cocaine hydrochloride, which corresponded to a base offense level of 24 under U.S.S.G. § 2D1.1.[1] The PSR also found that because there was no evidence that Murphy was "less culpable than any other criminally responsible participant," no mitigating role adjustment was warranted.

Murphy objected to the PSR's application of the first-degree murder cross-reference, its drug quantity calculation, and its omission of a minor role adjustment. The district court scheduled an evidentiary hearing regarding Murphy's objections so it could consider them in advance of sentencing.

At the hearing, a federal agent testified about text messages between Alexander, Murphy, and another co-defendant, and cell phone data from Alexander's iCloud account. He also testified about information that Alexander had provided.[2] The agent noted that ten empty .223 caliber casings were recovered at the scene of Gooden's murder. When Murphy was later arrested for driving a stolen vehicle, law enforcement found two .223 caliber rounds in the vehicle.

---

[1] Because the base offense levels for Counts 2, 10, and 11 were substantially lower than the offense level for Count 1, the PSR did not address any upward adjustments that might apply to those convictions.

[2] Alexander had pleaded guilty to a superseding information charging him with, *inter alia*, Gooden's murder in exchange for the government's agreement not to seek the death penalty for that murder or for another suspected murder.

No. 24-30347

Alexander then testified that Murphy drove him and a co-defendant to Gooden's location in the stolen vehicle, and that Murphy and the co-defendant were present when Alexander shot and killed Gooden with Murphy's .223 rifle. He used Murphy's .223 rifle because he was unable to retrieve his own assault rifle in time. Alexander explained that the three men did not discuss the details of the murder plot in text messages because they "knew what was taking place that day." Alexander also confirmed that he had pleaded guilty to Gooden's murder, among other charges, and had agreed to cooperate with the government in exchange for its agreement to not pursue the death penalty.

Murphy challenged Alexander's testimony as unreliable because he had pleaded guilty and cooperated to avoid the death penalty and because his testimony conflicted with his proffer, the cell phone records, the agent's testimony, and Murphy's factual resume. Murphy also argued that the district court should apply a beyond a reasonable doubt standard in assessing whether the evidence supported application of the first-degree murder cross-reference, given the resulting extraordinary increase in his Guidelines range. He argued that the cross-reference was inapplicable because there was "no evidence that any firearm or ammunition cited in [his] conviction was possessed or transferred with knowledge or intent that it would be used in Gooden's murder." Finally, he argued that the government failed to establish that the heroin attributed to him exceeded 28 grams.

At sentencing, the district court overruled Murphy's objections and his request for application of a heightened burden of proof, and it adopted the factual findings in the PSR. It sentenced Murphy to an aggregate sentence of 360 months of imprisonment, which was in the middle of the advisory Guidelines range calculated with the first-degree murder cross-reference, to be followed by concurrent three-year terms of supervised release. Murphy timely appealed.

4

## II

When a defendant objects to his sentence in the district court, we review the district court's interpretation and application of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v. Aderinoye*, 33 F.4th 751, 754 (5th Cir. 2022). "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *United States v. Coleman*, 609 F.3d 699, 708 (5th Cir. 2010). "Under the clear-error standard of review, we uphold a sentencing court's factual findings 'if they are plausible in light of the record as a whole, and they will be deemed clearly erroneous only if a review of all the evidence leaves this court with the definite and firm conviction that a mistake has been committed." *United States v. Humbles*, 149 F.4th 572, 578–79 (5th Cir. 2025) (quoting *United States v. Torres-Magana*, 938 F.3d 213, 216 (5th Cir. 2019)).

## III

Murphy first argues that the district court clearly erred in adopting the factual findings in the PSR regarding his involvement in Gooden's murder because they were based almost solely on Alexander's "inaccurate, inconsistent, and uncorroborated" testimony.

"District courts enjoy wide discretion in determining which evidence to consider and to credit for sentencing purposes." *United States v. Cantu–Ramirez*, 669 F.3d 619, 628 (5th Cir. 2012). When making factual findings at the sentencing stage, "the district court may consider any evidence 'which bears sufficient indicia of reliability to support its probable accuracy, including hearsay evidence.'" *United States v. Nava*, 624 F.3d 226, 230–31 (5th Cir. 2010) (quoting *United States v. Solis*, 299 F.3d 420, 455 (5th Cir. 2002)). Generally, a PSR "bears sufficient indicia of reliability to be considered by the sentencing judge in making factual determinations." *United States v. Masha*, 990 F.3d 436, 443 (5th Cir. 2021). "Where a

defendant wishes to challenge sufficiently reliable facts contained in a PSR, the defendant carries the burden of presenting rebuttal evidence showing that those facts are materially untrue, inaccurate, or unreliable." *United States v. Hawkins*, 866 F.3d 344, 347 (5th Cir. 2017).

At sentencing, the district court found that the testimony and evidence admitted at the evidentiary hearing, including text communications and cell phone data, provided sufficient proof that Murphy was involved in Gooden's murder. It found that Alexander's testimony about his and Murphy's roles in the murder was "corroborated by physical evidence and text messages."

Murphy argues that Alexander's timeline of events on the day of Gooden's murder was not corroborated by the cell phone records and text messages. "Even uncorroborated hearsay evidence may be sufficiently reliable for use at sentencing," however. *United States v. Andaverde-Tinoco*, 741 F.3d 509, 525 (5th Cir. 2013); *see also United States v. Lucio*, 985 F.3d 482, 487 (5th Cir. 2021) ("We have explained that a witness's partially corroborated testimony satisfied the 'sufficient indicia of reliability' standard despite '[t]he fact that portions of [his] testimony [we]re uncorroborated.'") (alteration in original) (citation omitted)). And although Murphy disputes its reliability, he did not present any rebuttal evidence to show that Alexander's testimony about Murphy's role in Gooden's murder was "materially untrue, inaccurate or unreliable." *See Nava*, 624 F.3d at 231 ("If the defendant takes issue with the evidence, he 'bears the burden of demonstrating that the information cannot be relied upon because it is materially untrue, inaccurate or unreliable.'" (citation omitted)).

Murphy also contends that prior conflicts between him and Alexander as well as Alexander's cooperation with the government undermine his credibility. But "[c]redibility determinations in sentencing hearings are

peculiarly within the province of the trier-of-fact." *United States v. Sotelo*, 97 F.3d 782, 799 (5th Cir. 1996) (citation modified). This court has long held that it "will not disturb a district court's credibility determination made at sentencing." *United States v. Goncalves*, 613 F.3d 601, 609 (5th Cir. 2010). And Murphy had opportunity at the evidentiary hearing to cross-examine Alexander to explore any inconsistencies or ulterior motives.

Murphy fails to show that the district court's finding that he aided and abetted Gooden's murder was implausible in light of the record.

IV

Murphy next argues that the district court clearly erred in adopting the calculation of heroin attributable to him in the PSR because the 100-gram amount was arbitrary and unsupported by the record.

The district court's calculation of drug quantity is a factual finding that is "'entitled to considerable deference' and will not be reversed 'as long as it is plausible in light of the record as a whole.'" *Lucio*, 985 F.3d at 485 (quoting *United States v. Koss*, 812 F.3d 460, 466 (5th Cir. 2016)). In determining drug quantities for sentencing purposes, the district court "'may extrapolate the quantity [of drugs] from any information that has sufficient indicia of reliability to support its probable accuracy[,]' and 'may consider estimates of the quantity of drugs.'" *United States v. Dinh*, 920 F.3d 307, 313 (5th Cir. 2019) (alterations in original) (quoting *United States v. Valdez*, 453 F.3d 252, 267 (5th Cir. 2006)). It may adopt the quantitative findings in the PSR "without further inquiry *if* those facts have an adequate evidentiary basis with sufficient indicia of reliability *and* the defendant does not present rebuttal evidence." *Id.* (emphasis in original) (quoting *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012)). "A defendant's mere objections at sentencing do not constitute competent rebuttal evidence." *United States v. Arayatanon*, 980 F.3d 444, 451 (5th Cir. 2020).

Here, the district court found sufficient evidence to support the finding that Murphy was responsible for 100 grams of heroin based on the text messages, which discussed the 28 grams of heroin Alexander promised Murphy for his assistance in Gooden's murder, the quality of heroin Alexander distributed to him, and the two 3.5-gram sales that Murphy was planning to make on January 10, 2020, as well as Murphy's admission that he frequently sold quantities of heroin.

Because Murphy did not submit any rebuttal evidence or otherwise show that the finding of drug quantity in the PSR was unreliable, the district court was entitled to rely on it. *See Dinh*, 920 F.3d at 313. The information underlying the PSR's drug quantity finding, including the discussions of amounts in the text messages, and Murphy's admission in the factual resume that he and his associates "frequently sold both quantities of heroin and cocaine on a regular basis" from January 2019 to December 2021, support the finding that Murphy was responsible for 100 grams of heroin. The district court did not clearly err.

V

Murphy also argues that he should have received a mitigating role adjustment under U.S.S.G. § 3B1.2.

Whether a defendant was a minor or minimal participant is a factual finding reviewed for clear error. *United States v. Castro*, 843 F.3d 608, 612 (5th Cir. 2016). A district court may decrease a defendant's offense level if he is "substantially less culpable than the average participant in the criminal activity." *Id.* § 3B1.2 cmt. n.3(A). The Guidelines permit decreases of four levels if the defendant was a minimal participant, two levels if he was a minor participant, and three levels if his role falls between minimal and minor. *Id.* § 3B1.2. The commentary to § 3B1.2 provides a non-exhaustive list of factors for courts to consider when making this factual determination. *Id.* § 3B1.2

cmt. n.3(C)(i)-(v); *see United States v. Gomez-Valle*, 828 F.3d 324, 329 & n.27 (5th Cir. 2016). The defendant bears "the burden of proving by a preponderance of the evidence that the adjustment is warranted." *United States v. Miranda*, 248 F.3d 434, 446 (5th Cir. 2001).

Murphy does not address the relevant factors or whether he is "substantially less culpable than the average participant." *Id.* § 3B1.2 cmt. n.3(A); *see United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006) ("Inadequately briefed issues are deemed abandoned."). He argues he was a "minor participant" because Alexander was the "mastermind" behind the murder plot. But this court has held that there is no "affirmative right to a § 3B1.2 reduction to every actor *but* the criminal mastermind." *Castro*, 843 F.3d at 612 (internal quotation marks and citation omitted). And the superseding indictment charged other defendants in the drug and firearms conspiracies to which Murphy pleaded guilty, but he failed to present any evidence showing that he was substantially less culpable than those defendants. He has not met his burden of showing that a mitigating role adjustment was appropriate. *See Miranda*, 248 F.3d at 446.

## VI

Murphy argues that the district court erred in applying the cross-reference because it requires that the firearm associated with another offense be "cited in the offense of conviction," and the superseding indictment does not allege that the .223 rifle used in Gooden's murder was connected to his conviction for conspiracy to possess and brandish firearms during and in furtherance of crimes of violence and drug trafficking.

The applicable Guideline for firearms offenses is U.S.S.G. § 2K2.1. When death resulted from a firearms offense, § 2K2.1(c)(1)(B) provides for a cross-reference to the most analogous homicide offense

> [i]f the defendant used or possessed any firearm or ammunition *cited in the offense of conviction* in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition *cited in the offense of conviction* with knowledge or intent that it would be used or possessed in connection with another offense.

*Id.* (emphasis added). The phrase "cited in the offense of conviction" is not defined in § 2K2.1.

We analyze the Guidelines according to "the ordinary rules of statutory construction." *United States v. Serfass*, 684 F.3d 548, 551 (5th Cir. 2012). If the language of the Guideline is unambiguous and does not lead to an "absurd result," our inquiry begins and ends with the plain meaning of that language. *Koss*, 812 F.3d at 473. And "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). "Application notes are given controlling weight so long as they are not plainly erroneous or inconsistent with the guidelines." *United States v. Rodriguez–Parra*, 581 F.3d 227, 229 n.3 (5th Cir. 2009).

The commentary for § 2K2.1 sets out two requirements for application of the cross-reference—that (1) "the firearm or ammunition facilitated, or had the potential of facilitating, . . . another offense" and (2) "the firearm or ammunition be cited in the offense of conviction." *Id.* § 2K2.1 cmt. 14(A). In deciding whether § 2K2.1(c)(1) applies, a district court "must consider the relationship between the instant offense and the other offense, consistent with relevant conduct principles," as well as "whether the firearm used in the other offense was a firearm cited in the offense of conviction." *Id.* § 2K2.1 cmt. 14(E).

Application Note 14(E) demonstrates its application. It explains that if the defendant's "offense of conviction is for unlawfully possessing a shotgun on October 15," and the district court determines that the defendant used the same shotgun in a robbery eight months earlier, the cross-reference should apply because unlawful possession of the shotgun on different occasions ordinarily will be "part of the same course of conduct or common scheme or plan," and using that shotgun "in connection with" the robbery would be "relevant conduct" to the shotgun possession conviction. *Id.* § 2K2.1 cmt. 14(E)(i). In contrast, if the defendant's "offense of conviction is for unlawfully possessing a shotgun on October 15," and the district court instead finds that the defendant "unlawfully possessed a handgun (not cited in the offense of conviction) and used the handgun in connection with a robbery" eight months earlier, the cross-reference does not apply "because the handgun was not cited in the offense of conviction." *Id.* § 2K2.1 cmt. 14(E)(ii).

Careful reading of the plain language of § 2K2.1(c)(1), along with the accompanying commentary and application note, supports the conclusion that the firearm involved in another offense must be cited in the indictment or information for a cross-reference under § 2K2.1(c)(1) to apply. Consideration of § 2K2.1(c)(1) in the context of other enhancement provision in § 2K2.1 provides additional support. Section 2K2.1(b)(7)(B)[3] provides for a four-level enhancement if the defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." *Id.* § 2K2.1(b)(7)(B). But unlike § 2K2.1(c)(1),

---

[3] At the time of Murphy's sentencing, this provision was found at § 2K2.1(b)(6)(B) in the Guidelines. *See* § 2K2.1(b)(6)(B) (2024).

which requires that the firearm be "cited in the offense of conviction," § 2K2.1(b)(7)(B) calls only for a "connection" between any firearm and the other offense.

This conclusion is also consistent with other Guideline provisions. Application Note 1(H) to § 1B1.1 defines the term "offense" as "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." Section 1B1.2(a) describes "offense of conviction" as "the offense conduct charged in the count of the indictment or information of which the defendant was convicted."[4] These definitions, our sister circuits have observed, demonstrate that "offense of conviction" is narrower than "offense" and excludes "relevant conduct." *See United States v. Lawler*, 818 F.3d 281, 284 (7th Cir. 2016); *United States v. Rebmann*, 321 F.3d 540, 543–44 (6th Cir. 2003); *United States v. Blackwell*, 323 F.3d 1256, 1260 (10th Cir. 2003); *United States v. Pressler*, 256 F.3d 144, 157 n. 7 (3d Cir. 2001). "Under the canon of consistent usage, 'a given term is used to mean the same thing throughout a statute.'" *United States v. Jones*, 136 F.4th 272, 280 (5th Cir. 2025) (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994)).

Notably, in *United States v. Greenough*, 669 F.3d 567 (5th Cir. 2012), this court relied on § 1B1.2(a) to interpret the phrase "offense of conviction" in the then-applicable version of § 2D1.1(a)(2) (2012).[5] Section 2D1.1(a)(2) provided for a higher Guidelines range when "the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance" distributed by a defendant, but the resulting death or serious

---

[4] This same definition is used in Application Note 2 to § 1B1.11.

[5] The phrase "offense of conviction" was removed from § 2D1.1(a)(2) in 2024, *see* U.S. Sent'g Guidelines Manual: Supp. App. C, Amend. 830 (2024), and is not included in the current version of § 2D1.1(a)(2) (2025).

bodily injury was not charged in the indictment. *Id.* at 572–73. Concluding that the resulting death is part of the crime of conviction that must be addressed in the indictment, this court held that the "offense of conviction" did not establish that death or serious bodily injury resulted from the use of the substance, and § 2D1.1(a)(2) should not have been applied, because the indictment lacked any allegation of resulting death. *Id.* at 574–75.

Finally, the amendment history of § 2K2.1(c)(1) reinforces the view that a cross-reference applies only if the firearm used in another offense is also cited in the offense of conviction. The Sentencing Commission amended § 2K2.1, effective on November 1, 2014, by adding the "cited in the offense of conviction" language to § 2K2.1(c)(1). U.S. Sent'g Guidelines Manual: Supp. App. C, Amend. 784 (2014). It also amended the application notes to § 2K2.1 to clarify the application of the revised cross-reference provision, including the note that "subsection (c)(1) contains the additional requirement that the firearm or ammunition *be cited in the offense of conviction.*" *Id.* (emphasis added). Although relevant conduct principles already limited the scope of § 2K2.1(c)(1), the Commission determined that further limitation was appropriate. *Id.* "Specifically, the instant offense and the other offense must be related to each other by, at a minimum, having an identifiable firearm in common." *Id.* The Commission made clear that § 2K2.1(c)(1) was revised "so that it applies only to the particular firearm or firearms cited in the offense of conviction." *Id.*

The government argues that § 2K2.1(c)(1)'s requirement that the firearm be "cited in the offense of conviction" is not a formulaic requirement concerning whether a firearm is identified in the charging instrument, but a limitation on the conduct that triggers the provision's application. Citing *United States v. White*, No. 23-10194, 2024 WL 4987350 (5th Cir. Dec. 5, 2024), it contends that a sentencing court may rely on additional factfinding to conclude that the firearm was involved in the offense of conviction.

Notably, and unlike this case, the indictment in *White* alleged that the defendant "possessed a Smith and Wesson, model SD40VE, .40 caliber pistol," and he "admitted that he possessed the firearm, as alleged." *Id.* at *1. And even if *White* may be read as suggesting that § 2K2.1(c)(1) "specifies a broader scope" of consideration than "relevant conduct," *id.* at *4, courts may consider all relevant conduct when applying cross-references "[u]less otherwise specified." *Id.* § 1B1.3(a). Section 2K2.1(c)(1) plainly states that it applies only when the firearm is "cited in the offense of conviction," and since "offense of conviction" does not include "relevant conduct," it is "otherwise specified" that relevant conduct is not considered when determining whether a particular firearm was involved in the crime of conviction. Section 2K2.1(c)(1)(B)'s requirement that the firearm be "cited in the offense of conviction" limits the reach of § 1B1.3's relevant conduct principles.[6] "We decline to expand the application of a Guideline when doing so would be plainly inconsistent with the Guideline's language." *United States v. Juarez*, 866 F.3d 622, 633 (5th Cir. 2017).

The government also argues that other circuits have found that § 2K2.1(c)(1) does not require the firearm to be specifically identified in the indictment for the cross-reference to apply. *See United States v. Edger*, 924 F.3d 1011, 1014 (8th Cir. 2019), *as amended*, (May 16, 2022) (rejecting defendant's argument that "a firearm is not 'cited in the offense of conviction' unless the indictment identifies the firearm by make, caliber, type, or some other characteristic"); *United States v. Aberant*, 741 F. App'x 905, 908 (4th Cir. 2018) (unpublished) ("Nothing in the Guideline or the commentary requires that the firearm must be specifically identified in the

---

[6] Notably, *White* relied on *United States v. Gonzales*, 996 F.2d 88, 91 (5th Cir. 1993), in reaching its conclusion, 2024 WL 4987350, *4 n.2, but *Gonzales* was decided well before this language was added to § 2K2.1(c)(1) in 2014.

charging instrument in order for the cross reference to apply."). But neither of the cases it cites considered the Guidelines' definitions of "offense" and "offense of conviction" in their analysis of § 2K2.1(c)(1). *See id.* § 1B1.1 cmt. 1(H) (defining "offense"); *id.* § 1B1.2(a) (defining "offense of conviction"); *see also Jones*, 136 F.4th at 280 (applying the canon of consistent usage when interpreting the Guidelines). And unlike this case, possession of a specific firearm was not disputed in *Aberant*. 741 F. App'x at 908 ("Aberant does not dispute that the rifle he was convicted of unlawfully possessing was the same rifle he used to shoot the victim in this case."). Likewise, the defendant in *Edger* admitted he knew that his co-defendant was involved in drug trafficking and that he agreed to hand over a firearm with the understanding that it would be used in connection with drug trafficking. 924 F.3d at 1014.

Here, Murphy disputes both possession of the .223 rifle and involvement in Gooden's murder. Neither the superseding indictment nor the factual resume "cites" the .223 rifle used in Gooden's murder. Because the firearm was not cited in the offense of conviction, the cross-reference under § 2K2.1(c)(1) is inapplicable.

## VII

Lastly, Murphy argues that the district court should have used a heightened burden of proof at sentencing because the cross-reference resulted in a dramatic increase in the Guidelines range, from 46–57 months to 324–405 months.[7]

Our precedent firmly establishes that "the burden of proof at sentencing is usually by a 'preponderance of the evidence.'" *United States v. Millsaps*, 157 F.3d 989, 994 (5th Cir. 1998) (citation omitted). While we have

---

[7] The district court calculated an offense level of 28, resulting in a Guidelines range of 87–108 months, without the cross-reference.

observed that a heightened burden may be required in rare cases where a relevant sentencing fact dramatically increases a defendant's sentence, we have never imposed one. *See United States v. Simpson*, 741 F.3d 539, 558 (5th Cir. 2014); *United States v. Mergerson*, 4 F.3d 337, 343 (5th Cir. 1993).

Murphy has not shown that his increased sentencing exposure due to the application of the cross-reference is so exceptional as to warrant a heightened burden of proof. *See*, *e.g.*, *Mergerson*, 4 F.3d at 344 (30 years to life); *United States v. Carreon*, 11 F.3d 1225, 1240 (5th Cir. 1994) (63–78 months to 235 months); *United States v. Dockery*, 249 F. App'x 1000, 1001 (5th Cir. 2007) (70–87 months to 210–240). The district court applied the appropriate burden of proof in this case.

## VIII

The district court's credibility and evidentiary determinations, drug quantity calculations, denial of a mitigating role adjustment, and use of the preponderance standard are AFFIRMED. We REVERSE its application of the cross-reference to first-degree murder, VACATE Murphy's sentence, and REMAND for resentencing.

No. 24-30347

Edith H. Jones, *Circuit Judge*, dissenting.

Although my colleagues' analysis of the USSG cross-reference provision, § 2K2.1(c)(1)(B), has some appeal, I believe their focus on one word in the reference misses the forest for the trees. It leads to the perverse consequence that the more violent criminal activity a defendant is charged with in addition to illegal gun possession, the less onerous his sentence—unless a particular firearm was "cited" in the offense of conviction.[1]

Thus, as the Guideline states, the defendant must be sentenced for homicide although charged with a gun offense, if the defendant

> used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition cited in the offense of conviction with knowledge or intent that it would be used or possessed in connection with another offense.

USSG § 2K2.1(c)(1)(B).

In addition, the Guidelines define "offense of conviction" as "the offense conduct charged in the count of the indictment or information of which the defendant was convicted." § 1B1.2(a).

By "cited," the majority opinion appears to mean that an exact identification of that firearm must be made somewhere in the indictment, or factual basis for a plea, or by the defendant's admission. Here, Murphy's clever counsel admitted just about everything concerning his extensive gang activity, drug dealing, and gun ownership *except* the .223 rifle he lent to Alexander, knowing it would be used to kill Gooden. But that connection was

---

[1] I otherwise concur in the majority opinion.

made in Alexander's "credible" sentencing hearing testimony.  Can the cross-reference really mean that Gooden's murder cannot be grounds for a homicide-based enhancement just because of a technical omission in the indictment?  If so, the Guidelines' aim to make the punishment fit the crime has been significantly undermined.

But there is a better interpretation of the cross-reference.  First, § 1B1.2(a) specifically defines the "offense of conviction" to mean the "offense conduct charged in the indictment" of which defendant was convicted.  Count I charged Murphy with conspiring to possess firearms in furtherance of and during "crimes of violence."  Gooden's murder was a crime of violence.  And Murphy possessed a "firearm," lent it to Alexander, and was the get-away driver after the murder.  It makes common sense for the Guideline to mean that a firearm "cited in the offense of conviction" means *any* firearm involved in the offense conduct charged in the indictment when death resulted.  Otherwise, the government must bear a burden to identify specific firearms in the indictment, although such specifically identified firearms are not an element of the crime.  In sum, the term "cited" is not used in a legalistic sense, but as a general connector between the offense of conviction and the related enhancing crime.

The majority points to an interpretive example offered by the Sentencing Commission.  In that example, an indictment charged illegal possession of one specific firearm, but a different firearm was used in an earlier crime.  The example does not bear on this case.  When the government has identified a single firearm in the indictment, as is common in felon in possession crimes, then using a completely different firearm to commit a felony or kill someone is not "in connection with" the charged offense.  That result is clearly correct.  But when broad drug and gang conspiracies involving firearms are charged, the government may be unable to tie specific firearms to specific defendants.  A cache of weapons is often located, and some of the

gang members will have participated in some but not all the violent activity, injuring or murdering others.  That the Commission's example fits a narrow type of gun charge does not mean it fits in a much different charging scenario like the one before us.  Nor does the example prohibit applying the cross reference whenever "firearms" are used or brandished in violent criminal activity.[2]

Finally, the majority pays too little attention to the holdings of the few relevant cases, including *United States v. White*.  To be sure, the identity of the particular firearm was conceded by the defendant in this case.   And *White*'s application of the cross-reference is unpublished and nonprecedential.  But *White* rules against the defendant, holding that the district court properly relied on "information not included in the indictment and the factual resume."  *White*, No. 23-10194, 2024 WL 4987350, at *3 (5th Cir. Dec. 5, 2024).

The holdings of *United States v. Aberant* and *United States v. Edger* are similarly ignored.  In *Aberant*, the court determined that "[n]othing in the Guideline or the commentary requires that the firearm must be specifically identified in the charging instrument in order for the cross reference to apply."  741 F. App'x 905, 908 (4th Cir. 2018).  In *Edger*, the court endorsed "the entire record of the case to determine whether a firearm is 'cited' in the offense."  924 F.3d 1011, 1014 (8th Cir. 2019).  These cases, taken at face value, point to an approach broader than the one advocated for by the majority.

---

[2] Of course, even if the defendant is charged, as here, with a broad firearms and violent crime offense, there is still a limit to the appropriateness of the cross reference.  If the defendant had used a firearm to kill a member of his family in a domestic dispute, then that wouldn't have been "in connection with" the offense of conviction.

One more point.  The majority holds, and I agree, that the district court committed no clear error in crediting codefendant Alexander's testimony.  That testimony framed the necessary connection between Murphy's firearm and the Gooden murder.  Expressed in terms of Count I, the "count of conviction," Murphy conspired "to possess" "firearms in furtherance of and during crimes of violence."  The evidence at sentencing was sufficient for the district court to find that Murphy's firearm "cited in the offense of conviction" was thus "transferred" to Alexander "with knowledge or intent that it would be used or possessed in connection with another offense."

I respectfully dissent.